## Overseers *against* Baker's Executors.

A township cannot be made chargeable with the expense of maintaining a pauper, otherwise than by the previous order of two justices of the peace.

ERROR to *Cumberland* county.

"Hope" had been a slave of Philip Baker. In 1818 an order of two justices, adjudicating him to be chargeable to the county of Cumberland as a pauper, was made; and he was removed to the poorhouse. In 1820 the county of Cumberland was divided, and the poorhouse was in that part which was called Perry county. The act dividing the county provided, that the poor of Cumberland should continue in Perry until 1824; that Cumberland might provide a place for her poor in the mean time. No such provision was made; but the commissioners of the county gave notice to the overseers of the poor of the different townships to take charge of their own paupers. Baker, the owner of "Hope," had lived and died in North Middleton township, whose overseers took charge of him, and

maintained him till he died, and brought this action against Baker's executors to recover the money expended by the township, in pursuance of the act of the 1st of March 1780, *sec.* 6.   The court below (Reed, president) was of opinion that the want of an order of removal in 1824 was fatal to the plaintiffs' right to recover, and a verdict was given for defendants.

*Watts*, for plaintiff in error.
*Alexander*, for defendant in error.

The opinion of the Court was delivered by

Sergeant, J.—The act for the gradual abolition of slavery, of the 1st of March 1780, after providing in section 5 for the recording of slaves, enacts in section 6, that unless the owner, before the slave attains his twenty-eighth year, executes and records a deed of manumission, he shall be liable " to. the overseers of the poor of the city, township or district to which any such negro or mulatto shall become chargeable," for the expenses and costs they may be put to through the neglect of the owner.   The negro Hope, being twenty-one years of age at the passage of this act, was embraced by its provisions, and appears to have been first set free by his master, Philip Baker, by his will dated in 1798.   In 1818 an order was made by two justices of the peace of Cumberland county, to remove him to the poorhouse of that county as a pauper, stating him to have formerly belonged to Philip Baker of North Middleton township, Cumberland county.   In 1820 the legislature divided the county of Cumberland, and laid off from it a new county, called Perry, the limits of which included the poorhouse.   In the last section of this act, which was passed on the 22d of March 1820, *Pamphlet Laws* 96, there is a provision, " that the poorhouse establishment, which will be included in the county of Perry, shall be, and continue to be conducted as heretofore for the term of four years from and after the passage of this act ; and at the expiration of the said four years, the commissioners of Cumberland county shall remove their paupers into their county."

The pauper continued in the poorhouse till the year 1824, when he was brought back to Cumberland county, and taken into custody by the overseers of the poor of North Middleton township, and various expenses incurred by them in his support, for which this suit is brought.   And the question is, whether Hope is to be considered as having become chargeable to North Middleton township, under the act of 1780.

The want of an order of two justices, adjudicating Hope to be chargeable to the township of North Middleton, is fatal to the claim of the plaintiffs.   The overseers of the poor of that township undertook to give him relief without it.   It is clear, that the first order could have no operation in fixing the pauper on North Middleton township, more than any other township: it was an adjudication

II.—LL

that the whole county was chargeable.  When the legislature con-
tinued the paupers for four years after the passage of the act of 1820,
in the poorhouse of Perry county, they may have contemplated the
possibility of some steps being taken in the meantime by Cumberland
county for the erection of a poorhouse, and the transfer thither of
all the paupers chargeable on that county.  This not being done,
and no further legislation taking place, the case must be governed
by the existing laws, independent of county poorhouses, by which
an order of two justices is necessary to authorise the disbursement of
the moneys of the township in the relief of paupers.   Overseers are,
in this respect, merely ministerial officers, exercising an authority
conferred by the order of the two magistrates, and are not trusted by
law with discretionary powers.

In the act of the 29th of March 1803, section 28, in rela-
tion to the poor of the city of Philadelphia and the neighbouring
districts, there is a provision on the subject of negroes and mulattoes
manumitted after the age of twenty-eight, expressly enabling the
overseers *of the place or township to which they are removed,* to recover
the expenses they are put to, from the default of the master.   This
clearly means a legal removal by order of two magistrates.

Judgment affirmed.